Good morning, Your Honors. May it please the Court, Jonathan Livy appearing on behalf of the appellant Elton Barnes. Your Honors, the 18-month sentence imposed on Mr. Barnes for non-criminal grade C violations of supervised release, the least severe violations that are available, a sentence which was well above the advisory guideline range of 6 to 12 months, was unreasonable for two reasons. First, the Court improperly relied on a factor that is simply not applicable to supervised release revocation sentences. Under the guidelines, Section 3553A2A, which is the need for a sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, this Court in McBell said that simply does not apply to supervised release revocation sentences. Yet the probation officer here expressly relied on that factor in recommending the sentence that it recommended. The government expressly relied on that factor in recommending the sentence it recommended. Did she just rely on that factor solely? She did not rely on that factor solely, but we believe the record certainly suggests she relied on that factor primarily. She also made some reference to deterrence and protection of the public, though it's not clear since we're dealing with non-criminal grade C violations, where we have an issue of deterrence or protection of the public from further criminal activity. He did not engage in criminal activity in this violation. How about where the district court said something about trust? That it violated the court's trust? Yeah. Well, she certainly, Judge Stiler certainly did say that was one of the factors, absolutely. And certainly with any violation of supervised release, that's one of the factors. The fact is we're dealing, this sentence was imposed well above the advisory guideline range. The sentencing commission certainly. Was it 18 months? 18 months. The guideline range was 6 to 12 months. Certainly, Judge Stiler did not give any specific explanation for why this sentence, it was necessary in this case to sentence so far above the guideline range. Well, she said it was a serious breach. She said it was serious. The government in probation argued that this was brazen conduct on his part. They all suggested they essentially engaged in the same criminal conduct that underlied his original conviction, which was preparing fraudulent tax returns, though the government conceded. They also considered how easy it was for him to comply. He was given probation. He was given limited instructions. One of them was that he wouldn't prepare returns. Well, he was not given probation, Your Honor. This was supervised release. He actually received a significant sentence. Supervised release. And then he was told not to do it. And he did it. That's true. He certainly, he prepared tax returns in violation of the court's order. No question about that. He didn't prepare them the way he was preparing them before. That's right. He certainly, there's no evidence. Not the criminal activity, I guess. That's right. Because it isn't alleged that he continued it. But he did do exactly what he was told not to do. Exactly. But it's still, it's the least severe violation that exists. It's a grade C violation, and the court did not give any justification for why, when we're dealing with such a low-level violation, it was necessary to then sentence him so highly above the advisory guideline range. Well, there are two parts to your argument, I guess. One is that the district court judge did put punishment into the mix, and that's a no-no. You can't just employ 3553A2 when you're sentencing judge for a violation of probation of supervised release. I think it's as simple as that. That's correct. And the second thing is that even if that were possible and were appropriate, that it's unreasonable in light of all the other factors and circumstances, and the court should rule on the issue of reasonableness. That's basically your argument. That's exactly right, Your Honor. You know, and I would also note. I would be shocked if you would have disagreed. Exactly. I would note the. I'll tell you what, you know, I am the district court judge, and it's so nice to be here and it's an honor to be here. But, you know, I sentence in Brooklyn every week three or four or five people, and the first thing I say is that I want you to know that I have not sentenced you in respect to your violation of supervised release because I'm punishing you. That's for the criminal law. Many times somebody comes before you as a violator who is also charged with a crime, and it's important to keep the line separate and clean so we understand it's the violation of trust that is the driving factor and not punishment. Exactly, Your Honor. That's basically what we're talking about. Exactly. I would note the. Let me ask you a follow-up question on that. You know, at the time of the hearing, when I read the record and I read the transcript and looked at the documents that were filed and whatnot, it didn't look to me like everybody was aware of what we had said in McBell. I agree. It certainly appeared that no one was aware of what this Court said in McBell. But McBell had already come down at the time of the hearing, right? That's true. That's true. But there's just an absence of any. And, Your Honor, I have no idea why that is. But, you know. We have since elaborated a bit more on McBell and Syntop. In Syntop, the Court certainly reaffirmed McBell. It clarified McBell to the extent the underlying violation is a criminal violation. In McBell, it was also a grade C violation they were dealing with. So in Syntop, it clarified that it could consider in terms of one's entire criminal history when you're dealing with a criminal violation as a supervised release violation. But in this case, of course, we're still dealing with non-criminal grade C violations. The condition that he not commit, not prepare additional tax returns, by the way, of course, it was imposed based on the underlying conviction for false preparation tax returns. That's a grade E felony, which would normally, he could only receive a statutory maximum revocation sentence of one year. He was only able to get beyond that one year because he also had a Social Security fraud conviction. The Court, in fact, sentenced the 18 months on the Social Security, as violating the Social Security fraud conviction, based almost entirely on a condition that had nothing to do with that count. That also, I believe, suggests the 18 months was an unreasonable sentence, given those circumstances. So what are we supposed to do, in your opinion? Well, if the Court agrees that there was an error under McBell, then it needs to send it back to the district court. Just to redo it. And to redo it. Understanding the limitations. Exactly. If the Court disagrees that there was a McBell violation, we believe still it was unreasonable based on the length of the sentence under these circumstances, and it should remain to the Court with instructions to sentence no greater than the advisory guideline range or below. And with that. Do you think we should comment on the issue of reasonableness at all if we do send it back under the prior precedent? If you send it back on reasonableness, I mean, certainly the Court can give some indication. But you point about the fact that it was only one year. That's right. That this is purely the tax statute. Should we perhaps give the district court judge a heads up on this? I would certainly welcome that, Your Honor. Unless the Court has further questions now, I'd reserve the balance of my time. That's fine. Thank you. At some point, you need to tell us whether the Court considered punishment in the sentence. One could conclude that you might have. I'm sorry. Could you repeat your answer? Instead of 18 months, did the Court consider punishment? One might conclude from reading what you said that you did. I think that it's fair to say that the Court considered the punishment of the violation behavior as a sanction for a violation of the Court's trust. And I want to emphasize, I believe, that the ‑‑ I'd like to quote one section out of Symtop where the word punishment is actually used. Now, it's on page 1058 of section of 485‑1063. Because the district court's trust in the violator's ability to coexist in society peacefully has been broken to a greater degree than if the violator had committed a minor offense of a dissimilar nature, greater sanctions may be required to defer future criminal activity. And the Court goes on to say, consequently, if the nature and the severity of the underlying offense were removed from the equation altogether, the Court's ability to predict the violator's potential for recidivism and to punish the violator for the violator's full breach of trust would be impaired significantly. So here, even this Court used the word punish in respect of a sentence imposed for the revocation, upon revocation of supervised release. Well, it's not clear to me that she was primarily concerned about trust. Yes, I can't, you know, that is, you know, I granted you supervised release and imposed these conditions, and lo and behold, look what you did. You violated my trust because you went out and you engaged in the same kind of activity that you were told not to Well, that's what she said here, but what she said here is, during the course of the hearing, she said, I have to agree with the government and the probation officer that the punishment is not severe enough. Again, the sanction for the violation of the trust placed in the defendant. And, yes, she used the word punishment, and as the Court noted, nobody apparently was aware of the impact of McBell at that time. And, in fact, I will confess that my brief that was submitted to that Court also cited Section 3553A-2A. But the Court And she goes on from what I said. She's talking about what he did, and she says, I won't call it per se criminal, but certainly the public is put in jeopardy when Mr. Barnes will not obey the conditions of supervised release. And I'm skipping over a sentence. I think to promote respect for the law and to provide just punishment and, more importantly, to provide adequate deterrence. And the violations here are quite similar. I want to point out that the underlying offenses for which Mr. Barnes was convicted involved the false tax return, and his hiding of the information of the income that he was deriving from his business of preparing tax returns from the government while he submitted applications for benefits under the Social Security Act. Here you have a very similar type of conduct, where he is again preparing tax returns. Now, they're not alleged to be false, but they've never been audited. He's hiding that information from the probation officer regarding the income that he's deriving from that, and he's failing to pay his restitution. I would like to at least emphasize that with respect to reasonableness of this sentence under the broader standard of whether the sentence was reasonable, that the Court did focus upon the multiplicity of the defendant's violations. Because it wasn't just that he did one thing, fell off the wagon and smoked some marijuana. But what do you say about the fact that if this were just a stand-alone tax situation, you'd be dealing with a one-year cap, and the only reason why he goes beyond the one year is because of the mix of the Social Security violation? I mean, he's sort of mixing apples and bananas here to some extent. I don't believe so, Your Honor, because while he was preparing tax returns, which wasn't alleged to be criminal in the sense that they were not alleged to be false, the supervisory lease, maybe I'm wrong on this, was it one year and then three years? Yes. They were concurrent, though, weren't they? Yes, they were concurrent, but that resulted in a three-year period of supervisory lease. Right, but it was a separate discrete determination in recognition that the one year was the max of supervisory lease for the tax scam. Under the 72062 conviction, yes. But the presentation of false information to the government to obtain Social Security benefits has a significant similarity to coming into the probation officer and presenting false financial information regarding the income that he had from preparing tax returns. He was committing the same sort of violation in lying to the government about the income that he was deriving from this activity. And the court emphasized that he had put himself back in a posture where all the trouble began, and that leaving him out there preparing tax returns endangered the public. The only references that the court made to punishment was at the beginning where she says that the punishment reflected by the guidelines doesn't seem to be severe. She used the word severe. She was quite clear. And just say adequate. The recitation, almost the rote recitation of the 3553A2A factor, where, as I pointed out to the court, even this court used the word punishment. And the court also used the term count one, which was the false tax preparation count, which is to run concurrent with the three years on the Social Security count, right? So at the time the petition for violation of the terms and conditions of supervised release had been filed, had the one-year period run on count one? You know, Your Honor, I don't believe that it had. But there seems to be some sort of period between when he finished his sentence of incarceration that he went to some outpatient and following that was when the probation department got the supervised release, took him in as to supervise him. Does his release period begin from the time that he's released from prison or from the time that he's released from the transition place? Your Honor, and I will point out that the period of time between when the probation officer began supervising him and the time of the offenses, the underlying violations in this proceeding, was less than a year. However, I don't know as a legal matter whether he is considered to be under supervised release at the time that he's doing this outpatient treatment. And there is not sufficient evidence in the record to show exactly when he left custody. Maybe if this case goes back to the district court, that might be something that needs to be resolved. Usually that's a condition of supervised release if I have it right, isn't it? Pardon me? Isn't it usually a condition of supervised release that he be placed in the facility outside of jail? This I don't, Your Honor, I simply don't know. Could it not be? It's a discretionary aspect, but the BOP as well. But we don't know all about this. We don't. We don't. However, I don't believe that, I still believe that the fact that he was on supervised release under the Social Security fraud violation is sufficient for the court to see whether he is following the terms of his release. It wasn't that he was ordered not to prepare tax returns for one year because the supervised release for that particular  I think you're correct. But that should just be clarified. Anything further? Not unless the court has some questions. Thank you. Thank you, Your Honors. Your Honors, just to address one of the last points, supervised release begins at the time the defendant is released from custody. If the defendant goes to a halfway house, that time, his supervised release time has already begun while he's serving any time in a halfway house. I don't have a cite for you, but I believe the court. Yeah, there's a case. Ultimately, that really didn't make any, even assuming that that one year had expired, the term of the condition of the supervised release still applied to the Social Security violation. That's certainly true. And the maximum possible sentence still existed. That's certainly true. I don't dispute that. Just in terms of the whole reasonableness calculus, we would submit that's certainly not something the court took into consideration. And it's, I think, a significant factor in the sense, especially since we're well above the guideline range. Unless the court has any further questions, I'd submit. Thank you so much. We appreciate your argument. The matter will be submitted. Court will take a five minute recess at this time. Thank you very much. This court shall stand in recess for five minutes.
judges: Farris, Paez, Block